IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.  13-cv-02052-WYD

CHAMBRE D. REED,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

# ORDER

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for supplemental security income.  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    BACKGROUND

In May 2010, Plaintiff protectively filed an application for supplemental security income.  She alleged that she was disabled by limitations caused by injuries to her back, shoulder and neck and obsessive compulsive disorder ["OCD"], and that her disability began on September 1, 2007.  (Administrative Record ["AR"] 153-56, 166.) Plaintiff was born on April 17, 1986, and was 24 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  (*Id.* 21.)

Following the initial denial of her application (AR 45-61), Plaintiff requested a hearing before an Administrative Law Judge ["ALJ"].  The hearing was held on December 18, 2011.  (*Id.* 26-46.)

On January 13, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 11-25.) In the sequential evaluation process required by law, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since May 5, 2010, the application date. (*Id.* 16.) At step two, the ALJ found that Plaintiff has the following severe impairments: recurrent OCD, obesity, anxiety, and back strain. (*Id.*) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (*Id.*)

The ALJ then addressed Plaintiff's residual functional capacity ["RFC"]. He found that she has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the option to alternate, at will, between sitting and standing; no more than occasional bending, squatting, or kneeling; no over chest level work; no complex tasks (SVP of 2 or less); and no dealing with the general public. (AR 18.)

At step four, the ALJ found that Plaintiff has no past relevant work. (AR 18.) At step five, the ALJ relied on vocational expert testimony in finding that Plaintiff could perform other work existing in significant numbers in the national economy. (*Id.* 31-32). This included work as a photocopying - machine operator (DOT No. 207.685-014) and counter clerk - photo finishing (DOT No. 249.366-010). (*Id.* 32.) Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-3), making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). Plaintiff timely requested judicial review, and this appeal followed.

Plaintiff argues that the ALJ failed to properly determine her RFC and credibility. Among other things, she asserts that the ALJ erred in the evaluation of the medical

evidence regarding her OCD, agoraphobia, anxiety and other diagnoses, and failed to properly evaluate the combined effects of her mental impairments.  She further argues that the underdeveloped nature of the step-three and RFC evaluations negatively affected the rating of the degree of her mental functional limitations.  Finally, Plaintiff asserts that the ALJ erred in connection with evaluating her physical impairments, and that the ALJ did not meet his burden at step five.

II.     ANALYSIS

   A.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'"  *Jones v. Colvin*, 514

F. App'x 813, 823 (10th Cir. 2013) (quoting *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (2012)).

The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A post-hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). Thus, I will not consider post-hoc arguments of the Commissioner.

    B.    <u>Plaintiff's Arguments</u>

        1.    <u>The Weighing of the Medical Evidence and RFC Assessment</u>

I first address Plaintiff's mental impairments. While the ALJ discussed several of Plaintiff's mental impairment diagnoses in his decision, he did not address whether all of these impairments were severe at step two. Thus, the ALJ noted that consultative examiner Dr. Victor A. Neufeld diagnosed depression, post traumatic stress disorder, amnestic disorder, and "R/O" Learning Disability and Borderline IQ. (AR 20, 221.) He also noted Dr. Marten's additional diagnosis of agoraphobia with panic. (*Id.*) Yet the ALJ ignored these impairments at step two and the later steps, which I find could have significantly impacted the decision.

While the ALJ gave "little weight" to Dr. Neufeld's opinion that Plaintiff has "serious symptoms or functional impairments", the diagnoses of mental impairments that he and the other medical providers made were "specific medical findings" which could not be rejected in the absence of conflicting evidence. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The ALJ's failure to consider these impairments at step two and beyond is reversible error. *Salazar v. Barnhart*, 468 F.3d 615, 622 (10th

Cir. 2006) ("It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; . . . .The ALJ's failure to consider Ms. Salazar's borderline personality disorder, singly and in combination with her other impairments, requires that we reverse.").

The error in the ALJ's failure to consider these diagnoses is illustrated by Plaintiff's symptoms associated with agoraphobia, which include anxiety and hyperventilation while in public resulting in Plaintiff avoiding leaving her home. (AR 259-60.) These symptoms resulted in Dr. Marten's diagnosis of Agoraphobia with Panic, which he found would "likely interfere with appropriate work and social functioning in public settings as well." *Id*. The ALJ's failure to consider this impairment at step two and beyond clearly impacted the decision. Indeed, it is difficult to determine how such symptoms could not significantly impact Plaintiff's ability to work. Accordingly, a remand is required on this basis. On remand, the ALJ must consider all of Plaintiff's mental impairments and, if found severe at step two, consider whether they meet or equal the listings at step three and the impact of these impairments in the RFC.[1]

Upon remand, even if the ALJ determines that certain impairments are not severe at step two, they must still be considered when assessing RFC and making conclusions at steps four and five." *Wells v. Colvin*, 727 F.3d 1061, 1068-69 (10th Cir.

---

[1] If found to be severe at step two, I agree with Plaintiff that the ALJ should consider at step three whether Plaintiff's agoraphobia, OCD and other impairments result in the "complete inability to function independently outside the area" of her home. 20 C.F.R. Pt.404, Subpt. P, App. 1 § 12.06C. Further, the ALJ should take into account the effect of Plaintiff's home setting. *Id.*, § 12.00F (highly structured and supportive settings may . . . be found in your home. Such settings may greatly reduce the mental demands placed on you . . . [if so] we must consider your ability to function outside of such highly structured settings . . . The paragraph C criterion of 12.06 reflects the uniqueness of agoraphobia, an anxiety disorder manifested by an overwhelming fear of leaving home).

2013). Thus, in the RFC assessment, "the ALJ must consider the combined effect of all medically determinable impairments, whether severe or not." *Id.* at 1069.

Related to the above finding, I find error with the fact that while the ALJ found Plaintiff's OCD to be a severe impairment, he failed to assess how the OCD may impact Plaintiff's ability to work. The law is clear that in developing the RFC, the ALJ must consider the limiting effects of all the claimant's impairments. 20 C.F.R. § 416.945; *see also Bowman v Astrue*, 511 F.3d 1270, 1272-73 (10th Cir. 2008).

On that issue, Plaintiff told Dr. Brett Valette she "feels like her ability to do her daily routine or work or do her chores is affected by her OCD and her depression." (AR 204.) She stated as to her OCD that she cannot use a public restroom, hand washes over 100 times a day, changes her clothes 10 times a day, picks at her hair and her eyebrows, has to go through a specific routine or she gets upset and anxious and hyperventilates, and has "periods of depression feeling helpless and worthless, because of her ["OCD"] and how it makes her housebound." (*Id.* 203-04.) She said she cannot work because "she says she just cannot be around people and she is so fearful of germs." (*Id.* 203.) Dr. Valette found Plaintiff to be credible, stating she was truthful, and concluded that Plaintiff "endorse[s] significant symptoms of [OCD] that are affecting her relationships, her ability to get chores done and her daily activities." (*Id.*) He stated she is much more isolative because of it." (*Id.* 205.) While the ALJ mentioned Dr. Valette and stated he assigned only moderate symptoms (*id.* 20)[2], he improperly ignored these

---

[2] Dr. Valette assigned a GAF score of 55, indicative of moderate symptoms. *Keyes-Zachary*, 695 F.3d at 1162 n. 1. "The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Id.*

findings. *See Lee v. Barnhart*, 117 F. App'x 674, 678 n. 2 (10th Cir. 2004) (unpublished) ("The ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability.").[3]

Plaintiff also reported to Dr. Brad Marten that she did not accomplish household chores because "she avoids touching objects", "she does not accomplish errands and shopping due to her tendency to avoid people", "she has given up shopping and socializing due to panic/anxiety", and she has a specific routine of showering and dressing multiple times per day, of washing her hands 50-100 times per day and of avoiding door knobs. (AR 252, 255.) Consistent with this, Dr. Marten diagnosed OCD and stated Plaintiff's tendency to avoid touching doorknobs and her report of compulsive hand washing may negatively impact or interfere with work functioning. (*Id.* 259-60.) Yet the ALJ failed to address this in the RFC or to weigh Dr. Marten's opinion.

While the ALJ stated that Dr. Marten did not render an opinion of the degree of Plaintiff's limitations regarding her ability to perform basic work-related activities, he ignored Dr. Marten's opinions that Plaintiff's OCD and agoraphobia would impact Plaintiff's work functioning. This was error. Where the ALJ does not provide any explanation for rejecting medical evidence, the court "cannot meaningfully review the ALJ's determination. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) Moreover, Dr. Marten's statements about Plaintiff's condition or impairments are specific medical findings that the ALJ errs in rejecting in the absence of conflicting evidence.

---

[3] Moreover, the Tenth Circuit has made clear that the existence of a moderate impairment is not the same as no impairment at all. *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). Even moderate impairments may decrease the ability to work. *See Bowers v. Astrue*, 271 F. App'x 731, 733-34 (10th Cir. 2008) (unpublished).

*Washington*, 37 F.3d at 1439.[4]  If the ALJ believed that Dr. Marten's findings were inadequate to determine whether a disability existed, he was required to contact him. See *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002); *Thomas v. Barnhart*, 147 F. App'x 755, 759-60 (10th Cir. 2005).

Next, I find error with the ALJ's weighing of the medical evidence regarding Plaintiff's mental impairments in connection with the RFC assessment.  The ALJ gave "little weight" to an opinion of consultative psychological examiner Dr. Neufeld.  On Axis I, Dr. Neufeld diagnosed Anxiety nos with Agoraphobic and Social Phobia Features, History of OCD, and probable Driving Phobia, Depression nos, Post Traumatic Stress Disorder, R/O Learning Disability, and Amnestic Disorder, nos; "R/O Borderline IQ" on Axis II; pain on Axis III; and a GAF score of 45, indicative of serious symptoms.  *Keyes-Zachary*, 695 F.3d at 1162 n. 1.  Dr. Neufeld noted that Plaintiff "described anxiety features that significantly limit her function", and opined that Plaintiff had "dramatic impairment in her ability to learn and recall new verbal information" and "poor comprehension and fund of information."  (AR 222.)  He also questioned whether Plaintiff could manage her own funds, and opined that Plaintiff "exhibited severe memory impairment", possible impairment in her ability to comprehend written instructions, and moderate impairment in social interaction.  (*Id.*)  Finally, he stated he suspected "her pain issues interfere significantly with persistence and pace", and

---

[4] While the ALJ stated that Dr. Marten expressed the opinion that Plaintiff's symptoms and/or functional limitations was moderate, noting the GAF score he assessed of 53 (AR 20), this did not allow him to simply ignore Dr. Marten's opinion as explained previously.  *See also Bowers v. Astrue*, 271 F. App'x 731, 733-34 (10th Cir. 2008) (noting that even moderate impairments may impact the ability to work).

-8-

recommended psychotherapy and "further testing to determine the severity of her cognitive [sic] and memory." (*Id.*)

The ALJ stated that he gave Dr. Neufeld's opinion "little weight" as the "exam was very brief." (AR 20.) However, the examination does not appear to be any different than that of Dr. Valette's which the ALJ relied on to discredit Dr. Neufeld's opinion. The Tenth Circuit has indicated that an ALJ cannot summarily reject a physician's report as inadequate when it is comparable to a report the ALJ found sufficiently detailed. *Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir. 1985).

The ALJ also stated that he gave little weight to Dr. Neufeld's opinion because "his conclusion appears to be based on the claimant's own report of her psychological problems rather than on objective findings." (AR 20.) Yet the ALJ ignored the many objective findings that Dr. Neufeld made. In addition to those discussed in the previous paragraph, Dr. Neufeld noted on examination that Plaintiff was slow to comprehend and exhibited a flat affect. (*Id.* 221.) He also found that Plaintiff "was not able to do serial 7 or 3 subtractions", "had difficulty learning 5 words over 2 trials and "could not recall any of them on free recall and 0 more with category cue", "had a limited fund of information", "was unable to answer a simple multiplication work problem", and "did not recognize why society pays taxes." (*Id.*) As the Tenth Circuit has made clear, "[a] psychological opinion need not be based on solely objective 'tests'; those findings 'may rest either on observed signs and symptoms or on psychological tests.'" *Thomas*, 147 F. App'x at 759 (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)). Further, "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Id.* The ALJ's approach of rejecting Dr. Neufeld's opinion

"because he based it, in part, on" Plaintiff's responses to "his tests involving memory and concentration impermissibly put the ALJ in the position of judging a medical professional on the assessment of medical data." *Id.* at 759-60.

Finally, the ALJ found that Dr. Neufeld's opinion was "not consistent with the substantial evidence of record", pointing to Dr. Valette's opinion that assessed a GAF score of 55 indicative only of moderate symptoms or limitations. (AR 20.)  *See Keyes-Zachary*, 695 F.3d at 1162 n. 1.  However, Dr. Valette made findings regarding Plaintiff's symptoms and their impact on functioning that are supportive of Dr. Neufeld's opinion, as discussed previously.  Dr. Marten also made findings that are supportive of Dr. Neufeld's findings.  While their GAF scores of 53 (Dr. Marten) and 55 (Dr. Valette) are slightly higher than the score of 45 assigned by Dr. Neufeld, all of the scores indicate at least moderate symptoms, and all of the doctors assessed difficulties in functioning.  Thus, Dr. Neufeld's opinion was not necessarily inconsistent with the evidence.  The Tenth Circuit is clear that an ALJ may not "'ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'" *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quotation omitted).

Instead of giving weight to any of the examining mental health providers, the ALJ chose to give "substantial weight" to the opinion of State agency psychologist Dr. Caruso-Radin in assessing Plaintiff's RFC.  (AR 20.)[5]  Dr. Caruso-Radin opined from her review of the record that Plaintiff had mild restriction of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining

---

[5] The ALJ also gave "considerable weight" to Dr. Caruso-Radin's opinion in finding that Plaintiff "does not have a mental impairment or combination of impairments of Listing-level severity." (AR 17.)

concentration, persistence, or pace; and no episodes of decompensation.  (*Id.* 54).  She also opined that Plaintiff retained the ability to "follow simple instructions, sustain ordinary routines and make simple work-related decisions, can respond appropriately to supervision, coworkers but would perform better with minimal to no interaction with the general public."  (*Id.* 54, 57-58.)  The ALJ gave "substantial weight" to this opinion (*id.* 20), and the RFC thus included "no complex tasks (SVP of 2 or less); and no dealing with the general public."  (*Id.* 18.)

Given the fact that the ALJ did not properly assess and weigh the opinions of the examining physicians, the ALJ on remand will have to reassess his reliance on the opinion of Dr. Caruso-Radin.  On remand, he must keep in mind that the "opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all."  *Robinson*, 366 F.3d at 1084.  Further, an ALJ's reliance on an agency medical consultant's opinion is reasonable only insofar as that opinion is supported by evidence in the case record.  *Lee,* 117 F. App'x at 687 (citing SSR 96-6P, 1996 WL 374180, at *2).  In other words, the agency consultant's opinion must itself "find adequate support in the medical evidence."  *Id.*

I also, however, find error with the ALJ's reason for giving Dr. Caruso-Radin's opinion substantial weight, *i.e.*, that it was "supported by and consistent with the record as a whole."  (*Id.* 20.)  That reason was conclusory, as the ALJ failed to explain how her opinion was supported by and consistent with the record.  Accordingly, it cannot be weighed to determine whether it is supported by substantial evidence.  *See Crawford v.*

*Colvin*, No. 12-5125, 2014 WL 1193336, at *2 (10th Cir. March 25, 2014) (holding the court could not determine whether substantial evidence supported the ALJ's decision not to give a physician's opinion controlling weight when the ALJ found the doctor's "opinions inconsistent with the other record evidence, but failed to identify those inconsistencies with any clarity"); *see also Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011) (noting as to conclusory finding by ALJ that "[i]t may be possible to assemble support for this conclusion from parts of the record cited elsewhere in the ALJ's decision, but that is best left for the ALJ himself to do in the proceedings on remand").

Moreover, I question what in the record supports Dr. Caruso-Radin's opinions. There is no indication that she took into account Plaintiff's OCD rituals and agoraphobia described by the examining physicians, or the significant functional limitations that they found as a result. It certainly seems that such symptoms could impact basic work activities that she ignored such as responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521(b).[6] The ALJ must consider on remand whether the totality of the evidence as to Plaintiff's agoraphobia and OCD overwhelms Dr. Caruso-Radin's opinion that Reed was able "to function independently outside the area of her home." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record. . .").

---

[6] It may have been that Dr. Caruso-Radin was basing her opinion, at least in part, on the fact that Plaintiff's previous claims were denied and "[t]here isn't much change since the previous two denials." (AR 54.) However, that was improper, as each application must be considered separately and there is no presumption of nondisability.

While the Commissioner asserts that the evidence "'manifested by the overwhelming fear of leaving home" would only overwhelm Dr. Caruso-Radin's opinion "if Plaintiff were credible, as her testimony (and the testimony of her mother) was the only evidence supporting her contentions" (Def.'s Resp. Br. at 20), this is not accurate. Instead, as discussed above, the examining medical providers rendered opinions about limitations Plaintiff would have as a result of her OCD and agoraphobia.

I now turn to Plaintiff's physical impairments. The ALJ gave "little weight" to the opinion of consultative examiner Ryan J. Otten, M.D. (AR 19.) Dr. Otten diagnosed chronic neck pain; chronic low back pain; chronic shoulder pain, decreased mobility, chronic bilateral knee pain, suspected osteoarthritis; morbid obesity; and generalized deconditioning. (AR 249.) He gave the following Functional Assessment:

> The number of hours the claimant should be able to stand or walk during a normal 8-hour workday is about 2 to 4 hours. The number of hours the claimant should be able to sit during a normal 8-hour workday is about 4 to 6 hours. Frequent postural difficulties are expected with bending, squatting, crouching, and stooping. . . .The amount of weight the claimant should be able to lift or carry frequently is less than 20 pounds or occasionally is less than 30 pounds. Occasional manipulative difficulties are expected with reaching, pushing, pulling, grasping, fingering, handling, and feeling with both upper extremities. The claimant should have only occasional exposure to heights, stairs and ladders. . . .

(*Id.*)

The ALJ found that Dr. Otten's opinion "is not well supported by the objective medical findings; i.e., normal gait; normal strength, sensation, and reflexes; and normal straight leg raising test." (*Id.*) The ALJ ignored, however, Dr. Otten's findings of decreased mobility; discomfort with cervical range of motion as well as dorsal lumbar ranges of motion; and moderate tenderness to palpation noted in the cervical and

lumbar areas, both over the spinal processes and in the left paraspinal regions.  (*Id.* 248-249.)  The ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.'"  *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).  Moreover, the ALJ was improperly substituting his lay judgment for that of the doctor as to what Dr. Otten's objective findings meant.  An ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*'"  *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (emphasis in original) (quoting *McGoffin*, 288 F.3d at 1252).  Accordingly, I find that the ALJ erred in connection with Dr. Otten's opinion, and that this is another basis for remand.

Instead of assigning any weight to the opinions of examining physician Dr. Otten, the ALJ chose to give "substantial weight" to the opinion of State agency medical consultant Dr. Steinhardt.  (AR 20.)  Dr. Steinhardt opined that, based upon severe obesity, sprain cervical spine, sprain thoracic and lumbar spine, Plaintiff could lift/carry 20 lbs. occasionally and 10 lbs. frequently; she could frequently climb ramps/stairs, balance, kneel, and crouch and occasionally climb ladders/ropes/scaffolds, stoop and crawl.  (*Id.* 55-56.)  Dr. Steinhardt thus opined from Plaintiff's medical records that she had the RFC to perform work consistent with light exertion.  (*Id.* 55-57.)

The ALJ found that Dr. Steinhardt's opinion was "supported by and consistent with the record as a whole."  (AR 19-20.)  He noted as to the record that Plaintiff's strength was good (*id.* at 19), and that "the medical evidence does not establish any

-14-

underlying medically determinable impairment other than 'back strain'". (*Id.*)  He cited

as an example the fact that "records from the claimant's primary care provider

document some complaints of thoracic and lumbar strain, with no radicular or

myelopathic symptoms." (*Id.*)  Finally, he noted that "[e]xamination records document

normal gait, muscle strength, motor function, reflexes, fine motor and cerebellar

function, sensory function, and straight leg raising test." (*Id.*)  Again, however, the ALJ

ignored objective findings that supported Plaintiff's complaints of symptoms relative to

her back impairment.  In addition to those noted by Dr. Otten, which I discussed

previously, there is other evidence that supports these complaints.  (*See, e.g.* AR

233—noting significant muscle tautness in the cervical, thoracic and lumbar

paravertebrals; 211—finding decreased range of motion of the lumbar, thoracic and

cervical spine regions and diagnosing Lumbago and Chronic pain syndrome).[7]

      Also, despite the above objective findings and despite Dr. Otten's diagnosis of

chronic pain, the ALJ rejected Plaintiff's complaints of "pain or other symptoms of the

intensity, frequency or persistence alleged", finding that Plaintiff was "less than fully

credible." (AR 19.)  However, a proper pain analysis requires the ALJ to consider not

only Plaintiff's subjective accounts of the severity of pain, but the medical data and any

other objective indications of the degree of pain.  Again, the ALJ erred by ignoring the

medical evidence and objective findings that supported Plaintiff's complaints of pain.  I

---

[7] The record also documents complaints of chronic pain by Plaintiff.  (*See, e.g.,* 232—complaint of thoracic and lumbar strain and pain, radiating from the bottom of her lower back up to her shoulders, aggravated by prolonged standing, prolonged sitting, stretching and exercise and relieved by heat and rest; 233—describing pain as numbing, tingling and stabbing with a 9 severity; 211—complaints of worsening pain since motor vehicle accidents in September 2006 and December 2008, cervical thoracic and low-back pain was noted from a 2 to a 6-7, exacerbated with bending, standing, sitting and relieved by lying down and improved with heat).

also note that since the ALJ assessed a light RFC and found Plaintiff's back strain was severe, he obviously gave some credibility to her back problems and her obesity. Yet he failed to account for any problems associated with that in terms of pain in the RFC. This appears to be inconsistent.

The above errors will require the ALJ to reconduct the five-step sequential evaluation, beginning at step two. On remand, the RFC and hypothetical question should take into account all of Plaintiff's impairments.

### 3. Credibility Findings

Plaintiff also argues, and I agree, that the ALJ erred in assessing her credibility. Thus, a remand is required on this basis as well. In so finding, I acknowledge that "'[c]redibility determinations are peculiarly the province of the finder of fact.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec. of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Id.* (quotations omitted).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC assessment. (AR 18-19.) I agree with Plaintiff that the ALJ erred as to some of the reasons given for this credibility finding. Thus, the ALJ found as to Plaintiff's physical complaints that she "had absolutely no physical complaints at the hearing." (*Id.* at 19.) Yet he diagnosed back strain as a severe impairment, thus conceding that she did have physical impairments.

Moreover, I find that the ALJ erred in not developing the evidence on this issue, *i.e.*, he did not ask her about her physical impairments. "The ALJ has a duty to fully and fairly develop the record as to material issues." *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993)). When the ALJ considers an issue that is apparent from the record, as Plaintiff's physical impairments were, he has a duty of inquiry and factual development with respect to that issue." *Id.*

As to Plaintiff's mental impairments, the ALJ found that "there is no evidence of any treatment for any mental health by any mental health professional." (AR 19.) "Her only treatment has consisted of Prozac prescribed by her primary care provider." (*Id.*) However, there is evidence in the record that Plaintiff lacked funds or insurance to afford such treatment. (AR 41, 201, 253.) The ALJ erred in not considering this in assessing Plaintiff's credibility. *See* SSR 96-7p, 1996 WL 374186, *7-8 (1996). A claimant's inability to afford treatment may constitute justifiable cause for failing to get such treatment. *See Threet v. Barnhart*, 353 F.3d 1185, 1191 n. 7 (10th Cir.2003); *Lee*, 117 F. App'x at 681.[8]

The ALJ also found that Plaintiff "has not demonstrated that her prescription medications are not effective or that they cause adverse side effects." (AR 19.) However, the record reflects that Plaintiff's Prozac medication was only partially effective for her depression per Dr. Marten's report. Indeed, Dr. Marten indicated that Plaintiff reported "current and recent symptoms of depression, including thoughts of hopelessness, hypersomnia, isolation, irritability, lack of patience, and worry", and

---

[8] This lack of funds may also have impacted Plaintiff's cancellation of some of her physical therapy visits, another factor mentioned by the ALJ in finding Plaintiff not fully credible. (*Id.* 19.)

diagnosed "Major Depressive Disorder, Single Episode" in only "partial remission." (*Id.* 254, 259.) Further, there is no evidence that Prozac helped her agoraphobia or OCD, and this medication was not a legitimate reason for undermining Plaintiff's credibility as to symptoms related to those impairments.

Finally, I find that the ALJ gave improper reasons for giving no weight to the testimony of Plaintiff's mother, Charlene Reed. The first reason for giving her opinion no weight is that she "is not a mental health professional". (AR 21.) However, this does not allow the ALJ to simply reject her testimony. Instead, parents are considered "other source" evidence who may have "special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). An ALJ is required to properly consider and weigh this testimony. *Id.;* 20 C.F.R. §§ 404.1513(d)(4) and 416.913(d)(4); SSR 85-16 ("relevant, reliable information, obtained from ... family members ... may be valuable in assessing" whether a mental impairment is disabling).

The ALJ also stated that Plaintiff's mother's "statements do not support vocationally relevant limitations not already included in the" RFC. (AR 21.) Again, this is not accurate. Plaintiff's mother Ms. Reed testified in detail about the impacts of Plaintiff's OCD and agoraphobia, and how they severely limit Plaintiff's functioning. (*Id.* 37-39.) For example, she testified that Plaintiff stays in her room and does not leave three to four days a week, that she is afraid to touch things due to mold and mildew, and that if her routine is upset, she must redo the entire routine again starting at step one. (*Id.*) These limitations were clearly not accounted for in the RFC. Further, Plaintiff's

mother's testimony is confirmation of the significant symptoms highlighted by Drs. Valette, Neufeld and Marten that were improperly ignored by the ALJ.

III.     CONCLUSION

Based upon the foregoing, I find that the ALJ erred in her assessment at steps two and three and in connection with the RFC.  She did not adequately weigh the medical evidence, and erred in assessing Plaintiff's pain and credibility and the credibility of Plaintiff's mother.  These errors impact the findings at later steps of the sequential evaluation.  Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated:  September 29, 2014

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge